# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 08-283 (DWF/SRN) |
| **Plaintiff,** | |
| v. | REPORT AND RECOMMENDATION |
| Steven Mark Renner, | |
| **Defendant.** | |

John Marti, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff United States of America

Lyonel Norris, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, Minnesota 55415, for Defendant Steven Mark Renner

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant's Motion to Suppress Statements, Admissions and Answers (Doc. No. 13), Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 14) and Motion to Suppress Evidence (Doc. No. 15).  This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

**I.    FACTUAL BACKGROUND**

Defendant is charged with four counts of tax evasion.  Testifying at the criminal motions hearing was Internal Revenue Service (IRS) Special Agent Teri Schultz.  The Government submitted seven exhibits: Government Exhibit 1 is an affidavit in support of the search of Defendant's home; Government Exhibit 2 is a search warrant for Defendant's home; Government Exhibit 3 is a search warrant for Defendant's Minneapolis office; Government

Exhibit 4 is an affidavit in support of the search of Defendant's Honolulu office; Government Exhibit 5 is a search warrant for Defendant's Honolulu office; Government Exhibit 6 is an affidavit in support of the search of The Best ISP (Internet Service Provider); and Government Exhibit 7 is a search warrant for The Best ISP.

### A. Special Agent Schultz's Testimony

Special Agent Schultz testified that on March 1, 2006, IRS agents executed search warrants on Defendant's Minnesota residence and business.[1]  Agents approached Defendant at his home, informed him that they had a warrant and Defendant permitted entry.   Defendant invoked his right to counsel on that occasion.

On April 21, 2006, Defendant telephoned Special Agent Schultz,  looking for certain business documents seized during the execution of the search warrants in March.  Special Agent Schultz testified that she did not attempt to interview Defendant, but told him that he should contact Assistant United States Attorney (AUSA) John Marti, rather than contacting her, and that he should talk to his attorney.  Special Agent Schultz understood that Defendant was represented by attorney David Bush at the time.

On March 13, 2007, Defendant contacted IRS Agent Marcus Lang, again seeking records and previously filed tax returns which had been seized during the execution of the search warrants.  Special Agent Schultz telephoned Defendant and informed him that he should contact his attorney and AUSA Tim Rank, to whom his case had been reassigned.   In the course of her contacts with Defendant in March 2007, Special Agent Schultz learned that Mr. Bush was no

---

[1]Special Agent Schultz was not present for the Minnesota searches because she was obtaining a search warrant for the search of Defendant's business office in Hawaii at that time.

longer representing Defendant because of Mr. Bush's involvement as a potential witness. Special Agent Schultz testified that she attempted to get the requested tax-related documents for Defendant, but could not recall if she had been successful.

Special Agent Schultz testified that AUSA Marti had received messages left by Defendant in February 2008 indicating that he could not afford an attorney, but he wanted to resolve the issues being investigated. AUSA Marti asked Agent Schultz to talk to Defendant, find out if he had an attorney and see if Defendant wanted to discuss the investigation.

Special Agent Schultz testified that in February 2008, she asked Defendant if they could meet. Subsequently, she and another IRS agent met with Defendant at his Minneapolis office on February 20, 2008, indicating that they wished to discuss a possible plea agreement. Defendant invited them into his office, where Defendant sat behind his desk, while the two IRS agents, dressed in business attire, sat opposite him. Special Agent Schultz testified that at no time did she attempt to force Defendant to make any statements, nor did Defendant request an attorney. When Special Agent Schultz asked Defendant if he had an attorney, he stated that he did not. Defendant indicated that he had contacted the Public Defender's Office and was told that they could not assist him until the filing of an information or indictment. Special Agent Schultz asked Defendant if he wished to continue talking to them and he said that he did. According to Special Agent Schultz, Defendant appeared a bit nervous, but was pleasant throughout the interview. During their discussion, Defendant addressed issues about the case. At no time did Defendant say that he did not wish to answer questions, nor did he ever indicate that he wished to leave. The interview lasted approximately one hour and five minutes. Special Agent Schultz asked Defendant if he would be interested in discussing a plea agreement with AUSA Marti and

he answered affirmatively.

Later that same day, Special Agent Schultz received a voicemail from Defendant thanking her for the meeting and asking to meet with her again. By mutual agreement, Special Agent Schultz met Defendant at the IRS office on February 22, 2008. Defendant was accompanied by David Bush. While Special Agent Schultz established that Mr. Bush had previously represented Defendant, Mr. Bush made clear that he was not appearing as Defendant's attorney, but in his capacity as Defendant's tax advisor.[2] Defendant did not object to the characterization of their relationship. Special Agent Schultz testified that Mr. Bush did the majority of the talking at the interview. Because Defendant did not object to Mr. Bush's statements, Special Agent Schultz testified that it was her assumption that Mr. Bush was speaking for Defendant.

While the interview was underway, Mark Enderson, a bookkeeper for Defendant's business, arrived. Special Agent Schultz had not planned on Mr. Enderson's attendance at the interview; she testified that neither Defendant nor Mr. Bush appeared surprised when he arrived, however. During the nearly one-hour interview, Special Agent Schultz testified that they discussed more details related to the tax investigation and she offered to relay the information to AUSA Marti. At no time did Defendant refuse to answer questions, nor was he ever placed under arrest. As with the previous interview, Special Agent Schultz testified that although Defendant appeared nervous, he remained pleasant.

## II.   DISCUSSION

Defendant moves to suppress statements, admissions and answers, arguing that any such

---

[2] Mr. Bush specifically described himself as an "off return advisor."

statements were made without the assistance of counsel, in violation of the Fifth and Sixth Amendments to the Constitution. He also raises a challenge under the Fourth and Fifth Amendments, contending that any such statements were not given freely and voluntarily.

In addition, Defendant moves to suppress evidence obtained as result of search and seizure on the grounds that the search warrants in this case were issued without the requisite showing of probable cause in the supporting affidavits and that the search warrants were executed unlawfully and illegally. Defendant contends that any searches and seizures were therefore conducted without a warrant, without probable cause and lacking in exigent circumstances. Moreover, to the extent that Defendant consented to any searches, he argues that such consent was coerced.

The Government contends that Defendant's statements were offered knowingly and voluntarily, with full knowledge of Defendant's right to counsel. In addition, the Government argues that there was sufficient probable cause for the issuance of the search warrants and no evidence of the unlawful or illegal execution of the warrants.

  **A.** **Suppression of Statements**

Defendant seeks to suppress all statements, admissions and answers on Fourth, Fifth and Sixth Amendment grounds. (Doc. 13, Def.'s Mot. Supp. Statements at 1-2.) As mentioned earlier, Defendant made two interviewed statements – on February 20 and February 22, 2008 – to IRS agents. In addition, he made other statements in the course of telephoning IRS agents in April 2006, March 2007 and February 2008 and Defendant left telephone messages for AUSA Marti in February 2008. At the time the statements were made, Defendant had not been arrested and was not in custody.

The Fifth Amendment privilege against self-incrimination protects individuals from being forced to testify against themselves. U.S. Const. amend. V. <u>Miranda</u> warnings must be given before any interrogation of a suspect in custody may take place. <u>Miranda v. Arizona</u>, 384 U.S. 436, 460-61 (1966). Before the government may introduce in its case-in-chief an incriminating statement made by a defendant, it must prove a voluntary, knowing and intelligent waiver of the accused's rights under the Fifth Amendment. <u>Id.</u> at 475.

Under <u>Miranda</u>, custody involves the deprivation of "freedom of action in any significant way." 384 U.S. at 444. To determine whether a person is in custody, a court assesses the objective circumstances of the situation from the perspective of a reasonable person in the suspect's position. <u>See</u> <u>Berkemer v. McCarty</u>, 468 U.S. 420, 422 (1984); <u>United States v. Cates</u>, 251 F.3d 1164, 1167 (8th Cir. 2001) (finding no custody when defendant requested interview, it took place outside defendant's house, officers neither were in uniform nor drew weapons, and defendant entered house unescorted during interview).

Regarding Defendant's telephone communications with IRS agents and AUSA Marti, the record reflects that Defendant initiated the phone contacts with the IRS agents on April 21, 2006 and March 13, 2007. Defendant also left messages for AUSA Marti in February 2008, prompting Mr. Marti to ask Special Agent Schultz to return the calls. Defendant also telephoned Special Agent Schultz following their in-person meeting on February 20, 2008.

In almost every instance, Defendant voluntarily initiated contact with the IRS and the United States Attorney's Office, the exceptions being when Special Agent Schultz returned calls on behalf of her colleague Marcus Lang in March 2007 and AUSA Marti in February 2008. In those instances, while she telephoned Defendant, it was in response to contacts that he had

6

initiated.

As for the April 21, 2006 telephone call made by Defendant to Special Agent Schultz, Ms. Schultz did not attempt to interview Defendant. Instead, she directed him to AUSA Marti and asked that he talk to his own attorney. In March 2007, after Defendant had contacted IRS agent Marcus Lang, Special Agent Schultz telephoned Defendant and reminded him that contact should be made through counsel. She instructed Defendant to contact his attorney, who could than contact the AUSA then assigned to the case, Tim Rank.

In February 2008, Special Agent Schultz contacted Defendant by telephone in response to AUSA Marti's request. AUSA Marti had received messages from Defendant and he asked Special Agent Schultz to determine if Defendant had an attorney and if he wanted to talk about the case. Finally, on approximately February 20, 2008, following an in-person interview, Defendant again called Special Agent Schultz, thanking her for the meeting and asking for another opportunity to meet in person.

At no time during these telephone contacts did Defendant request an attorney or state that he did not wish to answer questions. Defendant was not in custody, restrained or under arrest during these telephone conversations. In fact, Defendant was alerted to the fact that he could invoke the assistance of counsel because Special Agent Schultz advised him on several occasions to speak with his attorney.

Regarding the two in-person interviews held on February 20 and 22, 2008, the record also reflects that those meetings were voluntary and, in fact, were offered in response to Defendant's requests. Defendant was not under arrest, in custody or in any way restrained during the two interviews.

There is no evidence of coercion or promises made to Defendant in order to extract statements. The test for determining the voluntariness of a confession is whether the confession was extracted by threats, violence, or direct or implied promises, such that Defendant's "will [was] overborne and his capacity for self-determination critically impaired." Sumpter v. Nix, 863 F.2d 563, 565 (8th Cir. 1988) (quotation omitted). Whether a waiver is coerced involves "two distinct dimensions." Moran v. Burbine, 475 U.S. 412, 421 (1986). The relinquishment of one's rights must be (1) voluntary in the sense that it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) the waiver must be made with "a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Colorado v. Spring, 479 U.S. 564, 573 (1987). Only if the "totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Moran, 475 U.S. at 421; see also United States v. Rohrbach, 813 F.2d 142 (8th Cir. 1987) (totality of the circumstances includes the tactics used by the police, the details of the interrogation, and any characteristics of the accused that might cause his will to be easily overborne), cert. denied, 482 U.S. 909 (1987). Some factors the Court may consider in evaluating the totality of the circumstances include: the youth of the accused, the level of education of the accused, the lack of advice to the accused on his constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

As discussed above, Miranda warnings were not even required as Defendant was not in custody at the time he made the statements. Yet Defendant contends that his statements were not

given freely and voluntarily, thereby violating his rights under the Fourth and Fifth Amendments to the Constitution.   The key inquiry is whether a defendant's "will was overborne and his capacity for self-determination critically impaired."  United States v. Kilgore,  58 F.3d 350, 353 (8th Cir. 1995) (finding confession voluntary because there was no evidence of coercion even though the record reflected that police promised the defendant that he would not have to go to jail that evening).   As a preliminary matter, there is no evidence that any promises were made to Defendant.  Second, there is no evidence that Defendant's will was overborne when he was speaking with the agents or leaving messages for AUSA Marti.  The Supreme Court has held that coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986).

In addition, the Miranda right to counsel only attaches when a suspect invokes the right during custodial interrogation by making a clear and unequivocal request for counsel.  See Davis v. United States, 512 U.S. 452, 458-59b (1994) (holding that defendant's statement, "maybe I should talk to a lawyer," was ambiguous and did not require officers to clarify); Dormire v. Wilkinson, 249 F.3d 801, 805 (8th Cir. 2001) (finding no clear invocation of right to counsel because defendant's question, "Could I call my lawyer?" was ambiguous request for counsel), cert. denied, 534 U.S. 962 (2001).

There is no dispute that on each occasion that Defendant made a statement, he was not in custody, and therefore, did not need to be apprised of his Miranda rights. During several of the telephone communications, Special Agent Schultz advised Defendant to speak with counsel.  At the in-person meeting on February 20, 2008, the parties discussed the role of Mr. Bush,

identifying him as Defendant's tax advisor, not his attorney. Defendant clearly knew of his right to counsel, as he invoked the right during the execution of a search warrant on March 1, 2006, and made no statements at that time. Even if Defendant had been subject to custodial interrogation, he did not invoke the right to counsel during any subsequent dealings with law enforcement officers. There is no evidence of unreasonably long detentions, repeated or prolonged questioning or use of any physical punishment. There is simply no evidence that Defendant's statements to law enforcement officers were anything but voluntary. As such, Defendant's motion to suppress his statements should be denied.

      **B.**      **Motions to Suppress Evidence Obtained as a Result of Search and Seizure**

Defendant moves to suppress evidence obtained as a result of the searches and seizures of his Minnesota residence and business, his Hawaii business and his Internet Service Provider on or about March 1, 2006. The Court therefore turns to the inquiry of whether the "four corners" of the warrant affidavits supplied a substantial basis for concluding evidence of wrongdoing would be found in the places to be searched.

"It is well-established that courts may *not* look to facts outside the affidavit in determining the existence of probable cause," United States v. Martin, 833 F.2d 752, 757 (8th Cir. 1987) (Lay, C.J., concurring), cert. denied, 494 U.S. 1070 (1990); rather, "'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Etheridge, 165 F.3d 655, 656 (8th Cir. 1999).

"Probable cause exists if, based upon a common-sense consideration of all the circumstances set forth in the supporting affidavit, 'there is a fair probability that contraband or

evidence of a crime will be found in a particular place.'" United States v. Curry, 911 F.2d 72, 75 (8th Cir. 1990) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978).

Importantly, "[f]inely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision" whether a showing of probable cause has been met. Illinois v. Gates, 462 U.S. 213, 235 (1983). Rather, "'in dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Id. at 231 (citations omitted).

"[T]he preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination" as to the existence of probable cause. United States v. Leon, 468 U.S. 897, 914 (1984); accord Gates, 462 U.S. at 236-37. In this regard, this Court does not make a de novo review of the sufficiency of the affidavit. Gates, 462 U.S. at 236; accord United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986) ("[A] district court should not make a de novo determination of probable cause . . . ."). Rather, "the decision to issue the warrant is to be upheld if supported by substantial evidence in the record," Reivich, 793 F.2d at 959, or, in other words, "so long as the [issuing Judge] had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." Gates, 462 U.S. at 236. Moreover, a court "may properly rely on normal inferences drawn by the surrounding

circumstances and the allegations of facts contained in the affidavit." United States v. Carlson, 697 F.2d 231, 238 (8th Cir. 1983).

Finally, "[w]hen an affidavit is based in substantial part on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant considerations–but not independent, essential elements–in finding probable cause." Reivich, 793 F.2d at 959 (citing Gates, 462 U.S. at 230); accord, e.g., United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996). In the end, these considerations "should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question" of whether in the totality of the circumstances the issuing Judge had a substantial basis for concluding that probable cause existed. Gates, 462 U.S. at 230, 236.

### 1. Warrant for Defendant's Residence and Minneapolis Office

Special Agent Schultz's affidavit supplied probable cause for the issuance of the search warrants for Defendant's residence and Minneapolis office. (See Govt. Ex. 1). In the affidavit, Special Agent Schultz described the IRS's investigation into possible violations of the tax code involving Defendant, the business manager of his Hawaii office and Defendant's business itself. Specifically, the affidavit alleges that Defendant, his business and business manager received substantial income on which they failed to pay taxes or file tax returns for the years 2000, 2001, 2002, 2003 and 2004. (Govt. Ex. 1 at 4-5). In addition to Special Agent Schultz's experience that persons often retain financial and tax information in their residences, the affidavit states that Special Agent Schultz retrieved documents from the trash at Defendant's Minneapolis business that included personal financial information which was mailed to Defendant's home address. (Govt. Ex. 1 at 10-11.) Special Agent Schultz also indicated that a review of Defendant's

personal bank account records confirmed that he had used business funds to purchase expensive personal items, including artwork valued at over $350,000.00 and rare stamp and coin collections valued at over $120,000.00.  (Id.)

The affidavit contains facts relevant to establishing a nexus between Defendant, the allegations of tax evasion and the items to be seized, including financial records, tax returns, documents related to the ownership of the business in Minnesota and Hawaii and Defendant's residence, accounting records and electronic data.  (Govt. Ex. 2, Search Warrant for Search of Defendant's Residence).

Given the foregoing, the Court finds that all of the information viewed in totality, considering "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," Gates, 462 U.S. at 231, formed a substantial basis for concluding that there was probable cause (a fair probability) to believe that the places to be searched listed in the warrant would uncover evidence of illegalities as to Defendant.  As to Defendant's residence, "Few places are more convenient than one's residence for use in planning criminal activity and concealing fruits of a crime."  United States v. Hulett, 22 F.3d 779, 780 (8th Cir. 1994), cert. denied, 513 U.S. 882 (1994), citing United States v. Green, 634 F.2d 222, 226 (5th Cir. 1981).

"And, even if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed." United States v. Johnson, 219 F.3d 790, 791 (8th Cir. 2000) (citing United States v. Leon, 468 U.S. 897, 923 (1984)).  There is absolutely no indication that the issuing judge, United States Magistrate Judge Janie S. Mayeron,

abandoned her judicial role, that Special Agent Schultz knew of the falsity or was reckless with regard to the truth of anything in her affidavit, that the warrants were facially deficient, or that the warrants were so lacking in probable cause as to render official belief in them unreasonable. See generally United States v. Leon, 468 U.S. 897, 923 (1984) (explaining when the good faith exception does not apply); see also United States v. Gibson, 928 F.2d 250, 253-54 (8th Cir. 1991) (finding that the Leon good faith exception applied on a showing of probable cause much less than that exhibited here).

Finally, Defendant argues that the warrants were executed in an illegal and unlawful manner. Generally, an officer authorized by warrant to enter a private dwelling must comply with the "knock and announce" requirement. See 18 U.S.C. § 3109. Police generally may not exceed the terms of the authorizing warrant when conducting a search. See Marron v. United States, 275 U.S. 192, 196-97 (1927). If executing officers exceed the scope of a search warrant, the seized evidence may be suppressed. See, e.g., United States v. Schroeder, 129 F.3d 439, 442 (8th Cir. 1997). In this instance, the record is clear that Defendant allowed law enforcement officers to enter his residence. The officers executing the warrant informed Defendant that they were executing a warrant and presented him with a copy and receipt. (Govt. Ex. 2, Return at 1). While the record is silent as to the details of the execution of the search warrant at Defendant's Minneapolis office, conducted contemporaneously with the search of the residence, there is no evidence before the Court supporting a finding that the search of the Minneapolis office was illegal or unlawful. Also, despite Defendant's argument to the contrary, there is no evidence that coercion was used to obtain Defendant's consent to the searches. The Court therefore recommends the denial of Defendant's motion to suppress on grounds of illegal execution of the

search warrant for his residence and Minneapolis business office.

### 2. Warrant for Defendant's Business Office in Hawaii

Special Agent Schultz's affidavit provided probable cause for the issuance of the warrant for the search of Defendant's business in Hawaii. (See Govt. Ex. 4, App. and Aff. for Search Warrant of Hawaii Office). Special Agent Schultz again described the IRS's investigation into Defendant's possible violations of the tax code, particularly highlighting the details of his business in Honolulu and its role in his business. (Govt. Ex. 4 at 7, 10). According to the affidavit, records retrieved from the trash of the Defendant's offices and computer records indicated "that a person wanting to fund their 'account' with a cashiers check or money order must send it to the CCI Hawaii Support Center. . . ." (Govt. Ex. 4 at 10). Also, the affidavit reiterated the information contained within the affidavit for the search of Defendant's Minnesota residence and business regarding non-payment and non-filing of income tax and established a connection between the requested financial and business items to be seized and the Honolulu office.

The warrant was issued by United States Magistrate Judge Kevin S.C. Chang of the District of Hawaii, and there is no indication that he abandoned his judicial role, that Special Agent Schultz knew of the falsity or was reckless with regard to the truth of anything in her affidavit, that the warrant was facially deficient, or that the warrant was so lacking in probable cause as to render official belief in it unreasonable.

Additionally, although Defendant argues that this warrant was illegally and unlawfully executed, nothing in the record supports this argument, nor Defendant's argument that consent to search was obtained by coercion. The Court therefore recommends the denial of Defendant's

motion to suppress on the grounds of illegal execution of the search warrant for his Hawaii business office.

### 3. Warrant for Search of Internet Service Provider

IRS Special Agent Andrew Gibart attested to the affidavit in support of the search of The Best ISP, an Internet Service Provider that provided the electronic server for Defendant's business, Cash Cards International ("CCI"). Special Agent Gibart provided the same investigative background information found in the previously discussed affidavits and further focused upon CCI's use of computers and electronic data. (Govt. Ex. 6, Aff. in Support Search Warrant for The Best ISP at 22-23.) According to Special Agent Gibart, he spoke with Mark Enderson, Defendant's bookkeeper at CCI's Minneapolis office, while executing the search warrant of that office. (Id.) Mr. Enderson told Special Agent Gibart that all CCI information, including client files and payment information was stored on the server at The Best ISP, a company located in Minneapolis. Much of CCI's work was done over the internet. (Id. at 23.)

Special Agent Gibart's affidavit provided probable cause for the issuance of the search warrant for the search of The Best ISP. He fully described the investigation involving the tax records of Defendant, CCI and the connection with The Best ISP – a connection he discovered from Defendant's employee, Mr. Enderson. Based on the information in the affidavit, there was a fair probability that evidence of contraband would be found in the location to be searched, in this case, the offices of The Best ISP. As with the previous search warrants, there is no indication that United States Magistrate Judge Arthur J. Boylan abandoned his judicial role or that Special Agent Gibart recklessly, or falsely submitted information in his affidavit, that the warrant was facially deficient or that it was so lacking in probable cause as to render it

unreasonable. Likewise, there is no evidence in the record supporting Defendant's contention that the execution of the search was illegal or unlawful or that coercion was used to obtain consent to search. The Court therefore recommends the denial of Defendant's motions to suppress evidence and to suppress evidence obtained as a result of search and seizure.

**IT IS HEREBY RECOMMENDED** that:

    I.    Defendant's Motion to Suppress Statements, Admissions and Answers (Doc. No. 13) be **DENIED**;

    II.    Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 14) be **DENIED**;

    III.    Defendant's Motion to Suppress Evidence (Doc. No. 15) be **DENIED**.

Dated: December 1, 2008

        s/Susan Richard Nelson

        SUSAN RICHARD NELSON
        United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **December 16, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.